UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

ROBERT SEARLE,

         Plaintiff,

                   Case # 21-CV-6086-FPG

v.

                   DECISION AND ORDER

RED CREEK CENTRAL SCHOOL DISTRICT, et al.,

         Defendants.

## INTRODUCTION

    This case involves a dispute between an individual, Robert Searle ("Plaintiff"), the father of two children enrolled in school at Red Creek Central School District (the "District"), and the District and Brian Corey, individually and in his capacity as the District's Superintendent (the "Superintendent") (collectively, the "Defendants"). In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges (1) a First Amendment retaliation claim, and (2) a Fourteenth Amendment selective enforcement claim. *See* ECF No. 1.

    Defendants filed a motion to dismiss all of Plaintiff's claims on the grounds that Plaintiff failed to state a claim, that Plaintiff failed to establish *Monell* liability against the District, and that the Superintendent is entitled to qualified immunity. In the alternative, Defendants move for summary judgment on the grounds that there is no question of material fact and Defendants are entitled to judgment as a matter of law. ECF No. 6. For the reasons set forth below, Defendants' motion is GRANTED and Plaintiff's Complaint is DISMISSED.

## BACKGROUND[1]

At the time of the relevant events, Plaintiff was a resident of Wayne County in New York. ECF No. 1 ¶ 4. Plaintiff's two sons were students enrolled in and attending school at the District. *Id.* ¶ 9.

On January 14, 2020, Defendants' legal counsel, at Defendants' behest, sent a notice to Plaintiff directing that he not contact any faculty or staff of the District, or come on school grounds, without written permission of the Superintendent (the Court will refer to the notice as the "January 14 Directive"). *Id.* ¶ 8. According to Plaintiff, Defendants issued the January 14 Directive in response to lawful communications he previously sent to Defendants, wherein he was critical of Defendants, its faculty or staff. *Id.* ¶ 9. Plaintiff further states that such communications were sent properly and for the purpose of obtaining information over the treatment and academic progress of his two sons. *Id.*

The January 14 Directive stated the following:

> Superintendent Corey has forwarded to [counsel] email exchanges going back to August 2019 that [Plaintiff has] had with various District administrators and employees. Those emails are replete with abusive and inappropriate dialog and requests to terminate individuals with whom [Plaintiff] disagree[s]. [Plaintiff's] emails have become increasingly strident, to the point of being harassing. Accordingly, for the remainder of [the 2019-2020] school year [Plaintiff is] not to contact District staff or faculty directly. District employees have been advised not to respond to any communications from [Plaintiff]. If [Plaintiff] need[s] to communicate with the District [Plaintiff is] to do so in writing to the Superintendent, without copying other staff members in. Given the escalating nature of [Plaintiff's] harassing emails [Plaintiff is] also not to come on to school grounds unless [Plaintiff has] first obtained written permission from Superintendent Corey.

ECF No. 6-2 at 46.

---

[1] Unless otherwise noted, the following allegations are taken from Plaintiff's Complaint, ECF No. 1, including documents upon which Plaintiff relied in drafting the Complaint.

It is Plaintiff's position that the January 14 Directive was sent "for the purpose of inhibiting and punishing [him] from and for his constitutionally protected right of free speech under the first and fourteenth amendments," ECF No. 1 ¶ 10, and was "taken without rational basis and was done maliciously and in bad faith solely to treat [him] differently from other similarly situated parents and guardians of students at the [District]." *Id.* ¶ 11. As a result, Plaintiff asserts he has been "inhibited from and punished for exercising his constitutionally protected right of free speech and has been hampered in his ability to properly provide care and benefit for his sons and to prevent or redress improper treatment" at the District. *Id.* ¶ 12. Further, Plaintiff asserts that he has been "unreasonably hampered in or denied access to other activities at the District including attendance at sporting events, extracurricular activities, teacher meetings and conferences" as well as use of the community center. *Id.* ¶ 13. Plaintiff alleges that these harms are continuing. *Id.* ¶ 14.

## LEGAL STANDARD

As an initial matter, the Court would ordinarily need to determine whether to treat Defendants' motion as one for summary judgment, since Defendants rely on materials outside of the complaint. *See Kopen v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991) (Generally, "Rule 12(b)(6) gives district courts two options when matters outside the pleadings are presented . . . the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment."). Federal courts have discretion in determining whether to convert a motion into one for summary judgment. *See Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005).

In this case, however, the Court finds that it is unnecessary to convert the motion to dismiss, as the Court may properly consider Defendants' additional documents in the context of a Rule 12(b)(6) motion. Under Rule 12(b)(6), the complaint is deemed to include "any statements or

3

documents incorporated into it by reference." *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudication of such a motion may review only a narrow universe of materials. Generally, [a court does] not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." (modified)).  A document is incorporated in the complaint if the complaint expressly refers to it, *see id.*, and is considered integral "where the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Here, Plaintiff specifically references the January 14 Directive in his Complaint. ECF No. 1 ¶ 8. That email clearly satisfies this standard. The Complaint not only expressly references it, but the focus of this case is the intention behind it, and result of the directives provided therein. *See, e.g.*, *Thibault v. Spino*, 431 F. Supp. 3d 1, 6-7 (D. Conn. 2019) (considering, *inter alia*, a Facebook post that was the focus of the underlying free speech claim in rendering a decision on a motion to dismiss). As such, the Court will consider the January 14 Directive in evaluating Defendants' motion to dismiss.

In addition to the January 14 Directive, the Complaint specifically references communications sent to Defendants by Plaintiff "which were critical of Defendants, its faculty or staff and which were sent . . . for the legitimate purpose of obtaining information . . . over the treatment and academic progress of [Plaintiff's] two sons" who were enrolled in the District. ECF No. 1 ¶ 9. Because the basis of the assertions of Plaintiff are that those communications resulted in the January 14 Directive—which Plaintiff alleges violated his First and Fourteenth Amendment

rights—it is clear that those communications were "documents that [Plaintiff] either possessed or knew about and upon which [he] relied in bringing the suit."[2]  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citations omitted).  As such, the Court will also consider the communications leading up to the January 14 Directive in evaluating Defendants' motion to dismiss.

Finally, on a Rule 12(b)(6) motion to dismiss, a court may consider matters of which judicial notice may be taken.  *Goel*, 820 F.3d at 559.  The Second Circuit has indicated that press coverage which contains information, may be considered without regard to the truth of their contents.  *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  Therefore, the Court will also consider Plaintiff's January 22, 2020 published article in the Lakeshore News regarding the District.  ECF No. 6-2 at 48.  The article will not be considered for the truth of the contents therein, but rather, for the fact that such communication was written by Plaintiff.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief is plausible when the plaintiff pleads facts sufficient to allow the Court to draw reasonable inferences that the defendant is liable for the alleged misconduct.  *Id.*  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  At the same time, the Court is not required to credit "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . [with] a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir.

---

[2] Plaintiff agrees: he notes that the emails accurately reflect the communications sent and received between himself and Defendants.  ECF No. 8-5.

2007) (internal citations and quotations omitted).  The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Defendants move to dismiss the Complaint, arguing that (1) the Complaint fails to state a First Amendment claim because Defendants' actions did not chill his speech and were not motivated by Plaintiff's First Amendment interests; (2) the Complaint fails to state a Fourteenth Amendment claim because Plaintiff fails to show that how he was treated differently from other parents similarly situated; (3) the Superintendent is entitled to qualified immunity on the claims for monetary damages;[3] and (4) the claims against the District do not adequately plead *Monell* liability.

**I.      First Amendment Retaliation Claim**

Defendants argue that the retaliation claim fails because Plaintiff was excluded from campus and from communicating with District faculty and staff for a legitimate, non-retaliatory reason—namely, the District's right to control access to its premises and secure safety.  ECF No. 6-4 at 18-23.  Further, Defendants claim that Plaintiff cannot demonstrate that the January 14 Directive had a chilling effect on his speech.  *Id.*  As discussed below, the Court finds that Plaintiff failed to sufficiently allege a First Amendment claim and Defendants' motion to dismiss is therefore GRANTED.

---

[3] Since the January 14 Directive expressly states that the restrictions were in place for the "remainder" of the 2019-2020 school year, any claim for injunctive relief to prevent the alleged harms from continuing is DISMISSED AS MOOT.

6

The elements of a First Amendment retaliation claim are dependent on the "factual context" of the case. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). In order to establish a First Amendment retaliation claim, a plaintiff must demonstrate: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

In the first place, it is not clear that Plaintiff has a First Amendment interest in unrestricted communication to District teachers and staff. The public does not have a constitutional right to force the government to listen to their views. *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283 (1984). "Because government entities such as [a school district] do not have to listen to parents' views, it is not a constitutional violation to require that parents, if they wish to be heard, communicate only with particular staff members or do so only at a specified time and place. And because the government is under no constitutional obligation to respond to such views, there is no violation where a government entity such as [a school district] ignores (or threatens to ignore) communications from outside the specified channels." *L.F. v. Lake Wash. Sch. Dist. #414*, 947 F.3d 621, 626 (9th Cir. 2020). Plaintiff fails to meaningfully develop the legal basis for his contrary position. *See* ECF No. 8-6 at 4-5; *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Assuming that he does have such a First Amendment interest, Plaintiff must establish that the Defendants' January 14 Directive was motivated or substantially caused by the exercise of that First Amendment right. Plaintiff's Complaint provides that the January 14 Directive was based on previous lawful communications sent to Defendants from Plaintiff. ECF No. 1 ¶ 9. Indeed, the

7

January 14 Directive explicitly references email exchanges between Plaintiff and various District employees and states that those emails were viewed as abusive, inappropriate, and harassing. *See* ECF No. 6-2 at 46. As such, the District advised that Plaintiff was not to contact staff or faculty for the remainder of the school year. *Id.* Because the January 14 Directive explicitly references Plaintiff's prior communications as the conduct forming the basis for the restrictions, the Court finds that, for purposes of surviving a motion to dismiss, Plaintiff sufficiently alleges the Defendants' conduct in imposing communication restrictions were motivated by the exercise of Plaintiff's First Amendment right, to the extent he has such a right.[4]

Lastly, Plaintiff must establish that Defendants' action had a chilling effect on the exercise of Plaintiff's First Amendment right. "[W]here a private citizen claims First Amendment retaliation by a public official, the citizen is required to show that his or her speech was *actually chilled*; otherwise the citizen would, in most instances, be unable to demonstrate any concrete harm." *Avgerinos v. Palmyra-Macedon Central Sch. Dist.*, 690 F. Supp. 2d 115, 132 (W.D.N.Y. 2010) (emphasis added) (citing *Curley*, 268 F.3d at 73) (additional citation omitted). In order to meet this requirement, Plaintiff must prove that the retaliatory conduct deprived him of his First Amendment right by either (1) silencing him or (2) having some "actual, non-speculative chilling effect on his speech." *Williams*, 535 F.3d at 78. Thus, "[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley*, 268 F.3d at 73. Specifically, "[t]he Supreme Court has held that 'allegations of a subjective

---

[4] Defendants argue that the January 14 Directive was based on the District's obligation to ensure the safety of its students and to stop the harassment of its staff. ECF No. 6-4 at 22. Defendants argue that they viewed the flurry of emails, Plaintiff's willingness to show up at the school, and recent domestic violence accusations against Plaintiff as a whole and determined that restricting Plaintiff's access to the school and his communication with staff was reasonable to secure the District's security and protect its students and staff. *Id.* at 22-23. The Court notes that the safety of students has been found to be a legitimate basis upon which to restrict parental access to a school. *See Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 432-33 (E.D.N.Y. 2016), *aff'd*, 666 F. App'x 92 (2d Cir. 2016) (summary order). However, taking Plaintiff's allegations as true—as the Court must on a motion to dismiss—Plaintiff has plausibly pleaded that Defendants were motivated by Plaintiff's speech in issuing the directives.

"chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *See id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).

Plaintiff alleges, without elaboration, that he has been inhibited from exercising his right to free speech. *See* ECF No. 1 ¶¶ 12-13. However, Plaintiff does not allege any facts which suggest that he was prevented from all methods of communication with Defendants, nor that he was actually forced to stop all communications with Defendants. *See* ECF No. 1. Indeed, the January 14 Directive clearly states that Plaintiff could continue to communicate with the District, the communications were simply required to be directed to the Superintendent.[5] *See* ECF No. 6-2 at 46; *see also Avgerinos*, 690 F. Supp. 2d at 133 (dismissing plaintiff's retaliation claim where plaintiff did not allege that the school district's conduct prevented him from corresponding with defendants, but rather, the documents incorporated in the complaint indicated that plaintiff continued to communicate with the defendants after receipt of the allegedly "chilling" letter).

And, even if Plaintiff's speech was restricted, the facts are insufficient to state a First Amendment violation. Plaintiff does not allege any policy or practice making the school facility a public forum, and therefore the restriction is not subject to the highest scrutiny but is subject to a more limited review. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988). Indeed, regulation of activity in non-public fora need only be reasonable, so long as the regulation is not an effort to suppress the speaker's activity based on a disagreement with the speaker's view. *Int'l Soc'y for Krishna Consciousness, Inc.*, 505 U.S. 672, 679 (1992). Plaintiff does not allege facts that the Defendants limited the *content* of his speech. He was not prevented from communicating concerns with his sons' education or treatment or the behavior of employees. Rather, he claims

---

[5] The January 14 Directive limited Plaintiff to a specific channel of communication—in writing and to the Superintendent—but had no effect on Plaintiff's ability to communicate with, for example, the media. In fact, after the January 14 Directive, Plaintiff published an article discussing the Defendants' and the conduct of the Defendants in the Lakeshore News. *See* ECF No. 6-2 at 48.

that the manner in which he was able to communicate with the District and its employees was restricted in violation with his rights.  Such a restriction on speech is not a violation of First Amendment rights.  *See Hansen v. Watkins Glen Cent. Sch. Dist.*, 832 F. App'x 709, 712 (2d Cir. 2020) (summary order).

Likewise, the restriction on Plaintiff's access to the District was not pled in a manner which shows a violation of his First Amendment right.  Plaintiff does not allege that he requested access to the District facilities pursuant to the January 14 Directive and was subsequently denied.  Rather, Plaintiff states that he has been hampered in or denied access to activities at the District.  *See* ECF No. 1 ¶ 13.  Specifically, Plaintiff alleges that he was denied access to sporting events, extracurriculars, teacher meetings and conferences, and to utilize the public Community Center.  *Id.*  Without additional factual allegations, such as what specific event Plaintiff requested access to[6], when access was denied, or why access was denied, this is insufficient to establish a plausible First Amendment claim.  *See Hansen v. Watkins Glen Cent. Sch. Dist.*, No. 17-CV-6143-FPG-JWF, 2019 WL 3113309, at *8 (W.D.N.Y. July 15, 2019) ("There is no indication in the record that [defendant] would have denied [plaintiff] permission [to enter the school property] when she requested it.").

Therefore, Defendants' motion to dismiss this claim is GRANTED.

**II.      Fourteenth Amendment Selective Enforcement Claim**

In order to sufficiently plead a selective enforcement claim, Plaintiff must allege that (1) he was treated differently than other "similarly situated" individuals; and (2) "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or

---

[6] Without knowing what events in particular Plaintiff requested access to and was denied from, the Court cannot determine the nature of the forum and whether the restriction of access was constitutional.  *See Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 546 (D. Ver. 2014) ("The level of scrutiny applied to a First Amendment . . . claim depends on the nature of the forum.").

punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Jones v. Bayshore Union Free Sch. Dist.*, 666 F. App'x 92, 94 (2d Cir. 2016) (summary order) ("*Jones II*") (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (internal quotations omitted)). While Plaintiff alleges that the January 14 Directive was impermissibly motivated by retaliation for his speech, he fails to allege that there are similarly situated individuals who were treated differently than him. His bare allegation that the Defendants actions were taken "solely to treat Plaintiff differently from other similarly situated parents and guardians" is simply insufficient to survive a motion to dismiss. ECF No. 1 ¶ 11; *see Jones II*, 666 F. App'x at 94 (dismissing plaintiff's equal protection claim that a ban from district property was a violation of his rights where the complaint contained only bare allegations that others were similarly situated to him and no details alleging "*why* other individuals were similarly situated to him"); *Kamholtz v. Yates Cty.*, 350 F. App'x 589, 591 (2d Cir. 2009) (summary order).

Therefore, Defendants' motion to dismiss this claim is GRANTED.

### III. *Monell* Liability

"In order to hold the municipality liable for the acts of its employees, [a] plaintiff must show that the municipality has a policy or custom which causes the deprivation of his civil rights." *Dauber v. Bd. of Educ. of City of N.Y.*, No. 99 CIV. 3931 (LMM), 2001 WL 1246581, at *4 (S.D.N.Y. Oct. 18, 2001). However, "[i]n order to succeed, [a] plaintiff must demonstrate 'a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation,' and must show that the municipal policy was the 'moving force [behind] the constitutional violation.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). A school district can be liable under § 1983 based on the theory that (1) a district employee was acting pursuant to an expressly adopted policy; (2) a district employee was acting pursuant to a longstanding practice or custom;

or (3) a district employee was acting as a "final policymaker." *Hurdle v. Bd. of Educ.*, 113 F. App'x 423, 424-25 (2d Cir. 2004) (summary order).

Plaintiff's complaint lacks any allegation supporting the District's liability under any of these theories. While Plaintiff states in response to Defendants' motion to dismiss that *Monell* liability has been applied to superintendents "who can be considered a final decision maker over significant matters under certain circumstances," ECF No. 8-6 at 10 (citing *Saunders v. N.Y.C. Dept. of Educ.*, 07-CV-2725 (SJF) (LB), 2010 WL 2985031 (E.D.N.Y. July 20, 2010)), Plaintiff provides no factual allegation to demonstrate that the Superintendent was, indeed, the final decision maker here. The Supreme Court has stated that "whether a particular official has final policy making authority is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (internal quotations omitted). Therefore, to adequately plead such a claim on the basis that the Superintendent was the final decision maker, Plaintiff must allege that, with respect to the conduct challenged, the Superintendent was responsible under a particular state law for making that policy. *See Hurdle*, 113 F. App'x at 425-26 (evaluating New York Educational Law § 2590-j(8) to determine where the superintendent was the final decision maker with regard to the alleged retaliatory transfer in order to determine whether *Monell* liability applied).

## IV.   Leave to Amend

Although Plaintiff does not request leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." *Perri v. Bloomberg*, No. 11-CV-2646, 2012 WL

3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

Plaintiff is provided leave to amend his complaint to establish claims in accordance with this Decision and Order—to the extent such additional facts exist—against the District for the First and Fourteenth Amendment violations and against the Superintendent for the Fourteenth Amendment violation. However, Plaintiff is not permitted to amend the First Amendment claim against the Superintendent in his individual capacity as any amendment would be futile.

Indeed, qualified immunity protects public officials when they make reasonable, even if mistaken, decisions. "To decide whether to grant a public official's motion [to dismiss] based on qualified immunity, courts ask two questions: (1) whether the facts, viewed in the plaintiff's favor, show that the official's conduct violated a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of the alleged violation." *Hansen*, 2019 WL 3113309, at *4 (citing *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)). The Court does not need to take these questions in sequence but rather, "may determine that any constitutional violation was not clearly established" without deciding whether a constitutional violation occurred. *Brown v. City of N.Y.*, No. 13-CV-1018 (KBF), 2016 WL 1611502, at *4 (S.D.N.Y. Apr. 20, 2016), *aff'd*, 862 F.3d 182 (2d Cir. 2017).

"A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right." *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 437 (E.D.N.Y. 2016) ("*Jones I*") (quoting *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir. 1999)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the

unlawfulness must be apparent." *Doninger*, 642 F.3d at 345 (quoting *Zieper v. Metzinger*, 474 F.3d 60, 68 (2d Cir. 2007)).  "[A] determination of whether the right at issue was 'clearly established' 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).  Courts look to "whether (1) [the right] was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Id.*

Without determining whether Plaintiff's rights were violated, the Court concludes that the Superintendent is entitled to qualified immunity.  The right that Plaintiff asserts—the right to communication with district employees, and the right access school property for sporting events, extracurricular activities, teacher meetings, conferences, and to utilize the Community Center—has not been defined with reasonable clarity, nor has the Supreme Court or the Second Circuit confirmed the existence of this right.

For example, in *Jones v. Bay Shore Union Free Sch. Dist.*, 666 F. App'x 92 (2d Cir. 2016) (summary order), a superintendent enforced a restriction prohibiting plaintiff, a parent, from appearing on district property without the superintendent's permission.  *Id.* at 93-94.  The court stated that, "[w]hile there may be a protected interest in attending school [events], the school district does not categorically bar [plaintiff] from attending; it simply requires that [plaintiff] provide notice before doing so." *Id.* at 94.  Likewise, in *Hansen v. Watkins Glen Central Sch. Dist.*, 2019 WL 3113309, at *6-8 (W.D.N.Y. July 15, 2019), this Court determined that a superintendent defendant was entitled to qualified immunity on plaintiff's First Amendment claim

because reasonable courts could disagree about whether a restriction which required plaintiff to obtained permission before entering school property violated plaintiff's rights.

In *Johnson v. Perry*, 859 F.3d 156 (2d Cir. 2017), the Second Circuit affirmed the denial of qualified immunity of a school principal, finding that "the right not to be excluded, based on viewpoint differences or because of possible annoyance, from sports events to which the public was invited was clearly established." *Id.* at 176. In *Johnson*, there was an issue of fact as to whether the principal banned the parent from basketball games due to safety concerns or due to a desire "to punish him for having expressed his views that [the principal] had engaged in bullying and falsification." *Id.* However, in *Johnson* a categorical ban was involved, rather than a permission requirement as is present here.

Thus, there was no "controlling authority" in the Second Circuit at the time in question that clearly established the right Plaintiff asserts. Nor is there a "consensus of cases of persuasive authority such that a reasonable [superintendent] could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 604 (1999). Rather, recent cases support granting qualified immunity to the Superintendent. *See, e.g.*, *Barna v. Bd. of Sch. Dir. of Panther Valley Sch. Dist.*, 877 F.3d 136 (3d Cir. 2017) (affirming the grant of qualified immunity to the school board where the board ban plaintiff from attending meetings but offered plaintiff to submit written requests which the board would answer).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED and Plaintiff's Complaint is DISMISSED.

To the extent Plaintiff wishes to file an amended complaint, Plaintiff may do so within **21 days** of the date of this Order. If Plaintiff does not file an amended complaint within 21 days of

the date of this Order, the Clerk's office is directed to enter judgment and close this case without further Order.

IT IS SO ORDERED.

Dated: November 2, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York