UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT SEARLE,

                              Plaintiff,

                                                          Case # 21-CV-6086-FPG

v.
                                                          DECISION AND ORDER

RED CREEK CENTRAL SCHOOL DISTRICT, et al.,

                              Defendants.

## INTRODUCTION

Plaintiff Robert Searle ("Plaintiff"), the father of two children enrolled in school in the Red Creek Central School District, claims that Defendants Red Creek Central School District (the "District") and Brian Corey, individually and in his capacity as the District's Superintendent (the "Superintendent") (collectively, "Defendants") violated his rights under the First and Fourteenth Amendments of the United States Constitution.

The operative complaint, the First Amended Complaint (the "FAC"), ECF No. 11, was filed on November 26, 2021.  Defendants have filed a motion to dismiss both of Plaintiff's claims on the grounds that Plaintiff failed to state a claim for relief.  ECF No. 13-3 at 6.  In the alternative, Defendants move for summary judgment.  ECF No. 13-3 at 14.  For the reasons set forth below, Defendants' motion to dismiss is GRANTED and Plaintiff's FAC is DISMISSED.

## PROCEDURAL HISTORY

Plaintiff commenced this action on January 29, 2021 with the filing of his original complaint.  ECF No. 1.  On April 5, 2021, Defendants moved to dismiss the complaint for failure to state a claim.  ECF No. 6.  This Court issued a Decision and Order on that motion on November 2, 2021, in which it granted Defendants' motion and dismissed the original complaint.  ECF No.

10; *Searle v. Red Creek Cent. Sch. Dist.*, No. 21-CV-6086, 2021 WL 5086405 (W.D.N.Y. Nov. 2, 2021) ("*Searle I*").  In addition, the Court granted Plaintiff leave to file an amended complaint, but only "against the District for the First and Fourteenth Amendment violations and against the Superintendent for the Fourteenth Amendment violation." *Id.* at 13.  The Court did not grant leave to amend "the First Amendment claim against the Superintendent in his individual capacity," as any amendment would be futile based upon qualified immunity. *See id.* at 13-15.

Plaintiff filed the FAC on November 26, 2021.  ECF No. 11.  Presently before the Court is Defendants' motion to dismiss the FAC for failure to state a claim.  ECF No. 13.

## FACTUAL BACKGROUND[1]

On January 14, 2020, Defendants' legal counsel, at Defendants' behest, sent a notice to Plaintiff directing that Plaintiff not contact any faculty or staff of the District, or come on school grounds, without written permission of the Superintendent (the Court will refer to the notice as the "January 14 Directive").  ECF No. 11 ¶ 8.  According to Plaintiff, Defendants issued the January 14 Directive in response to lawful communications he previously sent to Defendants, wherein he was critical of Defendants, its faculty or staff.  *Id.* ¶ 9.  Plaintiff further states that such communications were sent properly and for the purpose of obtaining information over the treatment and academic progress of his two sons.  *Id.*

The January 14 Directive stated the following:

Superintendent Corey has forwarded to [counsel] email exchanges going back to August 2019 that [Plaintiff has] had with various District administrators and employees.  Those emails are replete with abusive and inappropriate dialog and requests to terminate individuals with whom [Plaintiff] disagree[s].  [Plaintiff's] emails have become increasingly strident, to the point of being harassing. Accordingly, for the remainder of [the 2019-2020] school year [Plaintiff is] not to contact District staff or faculty directly.  District employees have been advised not to respond to any communications from [Plaintiff].  If [Plaintiff] need[s] to

---

[1] Unless otherwise noted, the following allegations are taken from Plaintiff's FAC, ECF No. 11, including documents upon which Plaintiff relied in drafting the FAC.

communicate with the District [Plaintiff is] to do so in writing to the Superintendent, without copying other staff members in.  Given the escalating nature of [Plaintiff's] harassing emails [Plaintiff is] also not to come on to school grounds unless [Plaintiff has] first obtained written permission from Superintendent Corey.

ECF No. 13-1 at 46.

It is Plaintiff's position that the January 14 Directive was sent "for the purpose of inhibiting and punishing [him] from and for his constitutionally protected right of free speech under the first and fourteenth amendments," ECF No. 11 ¶ 10, and was "taken without rational basis and was done maliciously and in bd [sic] faith solely to treat [him] differently from other similarly situated parents and guardians of students at the [District]." *Id.* ¶ 11.

Plaintiff alleges that the group of similarly situated persons from which he has been treated differently are the "parents or guardians of students enrolled in and attending the Red Creek Central School between June 14, 2017 (the adoption date of the [District] Board Policies in place at that time) and January 14, 2020" who meet the following criteria:

(1) They "made complaints to the [District] about the [District], its administration or staff which were referred to the [Superintendent] from the building level pursuant to School Board Policy #3230 for resolution by the [Superintendent] whether or not those complaints were resolved by the [Superintendent] or were given the opportunity to refer the complaints to the School Board, pursuant to School Board Policy #3230";

(2) They "did not engage in any illegal conduct involving the [District] or its administration or staff";

(3) They "did not make any express illegal threat against the [District] its administration or staff"; and

(4) They "did not use any profane language in their complaints."

*Id.* ¶ 12.

According to Plaintiff, he was "inhibited from and punished for exercising his constitutionally protected right of free speech and was impaired in his ability to properly provide

3

care and benefit for his children to prevent or redress improper and deleterious treatment of his children as students" at the District due to Defendants' "unlawful action." *Id.* ¶ 13.  This, Plaintiff contends, violated "Defendants' stated policy of promoting communication and participation by all parents under School Board Policy #7270 and Code of Conduct, 'Role of the Parent' #7 and #15." *Id.*

Moreover, Plaintiff asserts that, as a result of Defendants' actions, he has been "unreasonably hampered in or denied access to other activities at the District including attendance at sporting events, extracurricular activities, teacher meetings and conferences" as well as use of the community center.  ECF No. 11 ¶ 14.

Plaintiff alleges that the decision to restrict his communications with the District and its faculty and the decision to restrict his access as described above were "made solely by [the Superintendent] as the final decision maker for the [District] . . . without seeking or having to seek permission from any other person or entity."  *Id.* ¶ 15.  Plaintiff further alleges that the Superintendent is granted such authority in accordance with School Board Policies #4310, #4320, and #1410.  *Id.*

Finally, Plaintiff contends that the violation of his constitutional rights, and any resulting harm, "are continuing at least as to any matters of interest or concern to residents of the District or the general public relating to the [District] or its premises."  *Id.*  Plaintiff alleges that his injuries "are continuing" insofar as they relate "to any matters of interest or concern to residents of the District or the general public relating to the [District] or its premises."  *Id.* ¶ 16.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief is plausible when the plaintiff pleads facts sufficient to allow the Court to draw reasonable inferences that the defendant is liable for the alleged misconduct.  *Id.*  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  At the same time, the Court is not required to credit "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . [with] a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal citations and quotations omitted).  The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. 679.

## DISCUSSION[2]

The Court considers first Plaintiff's First Amendment claim against the District before considering his Fourteenth Amendment claim against the District and the Superintendent.

## I.    First Amendment Retaliation Claim

To state a claim for retaliation under the First Amendment, "a plaintiff must plausibly allege (1) an interest protected by the First Amendment; (2) defendants' conduct or adverse action was motivated by the exercise of that First Amendment right; and (3) defendants effectively chilled

---

[2] For the same reasons set forth in *Searle I*, the Court declines to convert Defendants' motion to dismiss into one for summary judgment but (1) considers the January 14 Directive integral to the FAC; (2) considers the email communications as documents Plaintiff relied upon in bringing this suit; and (3) considers the Lakeshore News article not for the truth of the contents therein but, rather, for the fact that such communication was written by Plaintiff. *See Searle I*, 2021 WL 5086405, at *2-3.

the exercise of that right or caused some other concrete harm." *DS by and through CS v. Rochester City Sch. Dist.*, No. 6:19-CV-6528, 2022 WL 673119, at *8 (W.D.N.Y. March 7, 2022).

The harm which Plaintiff alleges in the FAC is twofold.  First, Plaintiff alleges that the January 14 Directive directed him "not to contact [Defendants], or any faculty or staff of the [District]." ECF No. 11 at 2.  Second, he alleges that the January 14 Directive prohibited him from entering school grounds "without prior written permission of [the Superintendent]." *Id.*  The Court considers each of these proscriptions and whether the District "chilled" the exercise of Plaintiff's First Amendment rights as a result.

### A.  Limitation on Contact with District Staff and Faculty

Though Plaintiff alleges that the January 14 Directive ordered him "not to contact [Defendants], or any faculty or staff of the District," ECF No. 11 at 2, the imposed limitation on his communications was narrower than this allegation suggests.  First, it was limited to "the remainder of this school year"—meaning the 2019-2020 school year. ECF No.13-1 at 46.  Second, the limitation states that Plaintiff was "not to contact District Staff directly." *Id.*  However, if Plaintiff "need[ed] to communicate with the District," he was permitted to do so "in writing to the Superintendent, without copying other staff members in." *Id.*

In *Searle I*, the Court found that Plaintiff's allegations fell short because he, *inter alia*, failed to adequately allege a "change in his behavior," and thus failed to show a "chill" of his First Amendment right to free speech. *Searle I*, 2021 WL 5086405, at *5.  In reaching that conclusion, the Court noted that

> Plaintiff alleges, without elaboration, that he has been inhibited from exercising his right to free speech. *See* ECF No. 1 ¶¶ 12-13.  However, Plaintiff does not allege any facts which suggest that he was prevented from all methods of communication with Defendants, nor that he was actually forced to stop all communications with Defendants. *See* ECF No. 1.  Indeed, the January 14 Directive clearly states that Plaintiff could continue to communicate with the District, the communications

were simply required to be directed to the Superintendent.  *See* ECF No. 6-2 at 46; *see also Avgerinos*, 690 F. Supp. 2d at 133 (dismissing plaintiff's retaliation claim where plaintiff did not allege that the school district's conduct prevented him from corresponding with defendants, but rather, the documents incorporated in the complaint indicated that plaintiff continued to communicate with the defendants after receipt of the allegedly "chilling" letter).

*Id.*

Plaintiff's FAC is similarly deficient.  The FAC contains no allegations that Plaintiff changed his behavior, *i.e.*, that he intended to contact a District faculty or staff member but did not do so because of the January 14 Directive.  Due to this deficiency, Plaintiff fails to allege that his First Amendment rights were "actually chilled"—and thus fails to state a claim.  *See MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 369 (E.D.N.Y. 2010) (dismissing First Amendment retaliation claim based upon plaintiff's failure to allege that defendants' conduct actually chilled the exercise of plaintiff's First Amendment rights because "the [c]omplaint [did] not contain any factual allegations setting forth specific instances in which [plaintiff] desired to exercise [his] First Amendment rights but was chilled by [d]efendants' alleged conduct.") (internal quotation marks omitted).

In his responsive briefing, Plaintiff argues that "[i]t can be seen from the pleadings that [his] conduct changed by having to resort to a letter to the editor in a newspaper which is not subject to the authority of the Defendants."  ECF No. 15-1 at 2.  This argument fails for at least two reasons.  First, as a procedural matter, "[i]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss."  *Budhani v. Monster Energy Co.*, No. 20-cv-1409, 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021)  Thus this additional allegation cannot properly be considered.

Second, while Plaintiff is correct that an ability to access an alternative avenue of speech does not necessarily preclude a First Amendment violation, the FAC is still devoid of any

allegations that Plaintiff ceased using the avenues at issue, *i.e.*, directly emailing faculty and staff, *because* of the January 14 Directive. *Cf. Jones v. Bay Shore Union Free Sch. Dist.*, 947 F. Supp. 2d 270, 275 (E.D.N.Y. 2013) (finding sufficient to state a claim plaintiff's allegations that he "had planned on attending the December 2011 Board meeting, that [d]efendants threatened him with arrest if he attended, and that [p]laintiff has not attended a Board meeting since.").

Accordingly, for all the reasons stated above, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim based upon the limitation on his communication with District faculty and staff is GRANTED and that claim is DISMISSED.

### B. Limitation on Access to Events on School Grounds

The Court turns next to the January 14 Directive's limitation on Plaintiff's access to school grounds. Specifically, the January 14 Directive stated: "Given the escalating nature of [Plaintiff's] harassing emails [Plaintiff is] also not to come on to school grounds unless [Plaintiff has] first obtained written permission from Superintendent Corey." ECF No. 13-1 at 46.

Plaintiff alleges that the requirement that he obtain written permission to enter onto schools has "unreasonably hampered" (1) his attendance at District activities "including . . . sporting events, extracurricular activities, teacher meetings and conferences"; and (2) his ability "to utilize the public Community Center located on school grounds." ECF No. 11 at 4. Defendants argue that this "permission requirement" was not an outright denial of access to school grounds and did not violate the First Amendment. ECF No. 13-3 at 21. Moreover, Defendants assert that Plaintiff's allegations fall short because he does not allege that he did indeed request permission to attend events or otherwise come onto school grounds and was denied access. *Id.*

In *Searle I*, the Court found that

the restriction on Plaintiff's access to the District was not pled in a manner which shows a violation of his First Amendment right. Plaintiff does not allege that he

requested access to the District facilities pursuant to the January 14 Directive and was subsequently denied. Rather, Plaintiff states that he has been hampered in or denied access to activities at the District. *See* ECF No. 1 ¶ 13. Specifically, Plaintiff alleges that he was denied access to sporting events, extracurriculars, teacher meetings and conferences, and to utilize the public Community Center. *Id.* Without additional factual allegations, such as what specific event Plaintiff requested access to, when access was denied, or why access was denied, this is insufficient to establish a plausible First Amendment claim. *See Hansen v. Watkins Glen Cent. Sch. Dist.*, No. 17-CV-6143-FPG-JWF, 2019 WL 3113309, at *8 (W.D.N.Y. July 15, 2019) ("There is no indication in the record that [defendant] would have denied [plaintiff] permission [to enter the school property] when she requested it.").

*Searle I*, 2021 WL 5086405, at *5. The Court further noted that, "[w]ithout knowing what events in particular Plaintiff requested access to and was denied from, the Court cannot determine the nature of the forum and whether the restriction of access was constitutional." *Id.* at *5 n.6.

As Defendants contend in their briefing, "neither the [FAC] nor Plaintiff's opposition add any facts at all as to what events he was denied access to, or whether he requested access at all." ECF No. 16 at 6. The Court agrees. Plaintiff has not even attempted to cure the deficiencies above that the Court highlighted in *Searle I*.

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim arising from restrictions on his access to school grounds is GRANTED and that claim is DISMISSED.

### C. *Monell* Liability against the District

Finally, the Court turns to Plaintiff's *Monell* liability theory against the District. "[B]ecause [P]laintiff has not made a *prima facie* case of First Amendment retaliation," it follows that any claim based upon *Monell* liability fails as well and the Court need not reach the merits of such a claim. *See Pitton v. New York City Dep't of Educ.*, 148 F. Supp. 3d 217, 232 (E.D.N.Y. 2015); *see also Jones v. Bay Shore Union Free Sch. Dist.*, 666 F. App'x 92, 95 (2d Cir. 2016)

(summary order) ("Because we conclude that there was no constitutional violation to begin with, we need not reach the question[ ] of . . . Monell liability as [it] pertain[s] to particular defendants."); *Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 146 (E.D.N.Y. 2016) ("Because Plaintiff has failed to allege a constitutional violation, there is no need for the Court to address whether Plaintiff properly named the School District as a defendant in this action."). Accordingly, Plaintiff's *Monell* claim is DISMISSED.

## II.     Fourteenth Amendment Selective Enforcement Claim

In *Searle I*, the Court dismissed Plaintiff's selective enforcement claim based upon the finding that "[h]is bare allegation that the Defendants' actions were taken 'solely to treat Plaintiff differently from other similarly situated parents and guardians' [was] simply insufficient to survive a motion to dismiss." *Searle I*, 2021 WL 5086405, at *6 (quoting ECF No. 1 ¶ 11).

In the FAC Plaintiff has bolstered his previous allegation regarding others who are similarly situated by alleging that he is similarly situated to "parents or guardians of students enrolled in and attending the Red Creek Central School between June 14, 2017 (the adoption date of the [District] Board Policies in place at that time) and January 14, 2020" who meet the following criteria:

(1) They "made complaints to the [District] about the [District], its administration or staff which were referred to the [Superintendent] from the building level pursuant to School Board Policy #3230 for resolution by the [Superintendent] whether or not those complaints were resolved by the [Superintendent] or were given the opportunity to refer the complaints to the School Board, pursuant to School Board Policy #3230";

(2) They "did not engage in any illegal conduct involving the [District] or its administration or staff";

(3) They "did not make any express illegal threat against the [District] its administration or staff"; and

(4) They "did not use any profane language in their complaints."

ECF No. 11 ¶ 12.

Defendants argue that the FAC's more fulsome allegations regarding "similarly situated comparators" are still insufficient as a matter of law.   In response, Plaintiff asserts that his allegations are indeed sufficient and that "[t]he names and complaints from district residents and responses by the [District] are not public record that can be searched by a plaintiff."  ECF No. 15-1 at 4.  Thus, Plaintiff contends, the issue of whether comparators are similarly situated is "best resolved after the parties engage in discovery."  *Id.*

To state a claim for selective enforcement, a plaintiff must allege: "(1) [he was] treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Jones*, 947 F. Supp. 2d at 279 (alterations in original).   In the absence of treatment based upon an "impermissible consideration," a plaintiff may adequately allege a so-called "class-of-one" equal protection claim where he establishes: "(1) he was 'intentionally treated differently from others similarly situated,' and (2) 'that there is no rational basis for the difference in treatment.'"  *Id.* (quoting *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013)).

Here, Plaintiff does not allege in the FAC, nor does he argue in his briefing, that the alleged differential treatment he suffered was based on an "impermissible consideration," such as race or religion.  *See generally* ECF No. 11; ECF No. 15-1.  Instead, Plaintiff asserts that he was "resigned . . . to a class of one based solely on the content of his constitutionally protected speech."  ECF No. 15-1 at 3.

As with his original complaint, Plaintiff's FAC has failed to adequately allege similarly situated comparators in a manner sufficient to state a class-of-one equal protection claim.  A

"[p]laintiff is required to allege differential treatment from 'similarly situated' individuals in order to state a viable equal protection claim under either theory." *Vaher*, 916 F. Supp. 2d at 433-34. His allegations are akin to what other courts in this Circuit have found insufficient at the pleading stage. *See id.* at 434 (granting motion to dismiss where plaintiff did not "identif[y]" any individuals whom were allegedly similarly situated to him); *Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669, at *8 (S.D.N.Y. Sept. 30, 2011) (granting motion to dismiss where allegations of comparators amounted to "a conclusory reference to unspecified similarly situated persons without accompanying examples"); *MacPherson*, 738 F. Supp. 2d at 371 (granting motion to dismiss equal protection claim where "the [c]omplaint does not identify any comparators or similarly situated entities at all"); *D.F.* ex rel. *Finkle v. Board of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005) (granting motion to dismiss where plaintiff alleged "upon information and belief, other students attending middle school within the School District who engaged in similar or more severe conduct, including actual threats of violence, received suspensions of a lesser duration than [plaintiff's]").

To be sure, "plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage." *Vaher*, 916 F. Supp. 2d at 434. However, a court "still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Id.* "Thus, [w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim." *Id.* (alteration in original) (citation & internal quotation marks omitted). Here, Plaintiff's general allegations fall short as he fails to allege "what similarly situated individuals were treated differently, and how the [District's] conduct was irrational or motivated by animus." *Seabrook v. City of New York*, 509 F. Supp. 2d 393 ,402 (S.D.N.Y. 2007).

Accordingly, Defendants' motion to dismiss Plaintiff's equal protection claim is GRANTED and Plaintiff's claim is DISMISSED.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED and Plaintiff's FAC is DISMISSED.  The Clerk of Court  is directed to enter judgment and close this case.


IT IS SO ORDERED.

Dated: August 18, 2022
      Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York